## UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PRESERVE AT WOODLAND HARBOR, LLC, | ) | Case No. 06-12478 |
| Et al. | ) | (Jointly Administered) |
| | ) | |
| Debtor. | ) | Hon. Carol A. Doyle |

## INTERIM ORDER AUTHORIZING DEBTORS TO: (A) INCUR POSTPETITION DEBT ON AN EMERGENCY BASIS; (B) GRANT LIENS AND PROVIDE SECURITY AND OTHER RELIEF TO CONNAN, INC. AS DIP LENDER AND (C) SETTING DATE FOR FURTHER HEARING ON THE DIP FACILITY

This matter came before this Court on the motion (the "Motion") of Preserve at Woodland Harbor, LLC and Woodland Harbor Holdings, LLC (the "Debtors") requesting that this Court enter an order authorizing Debtors to: (a) incur Postpetition Debt on an emergency basis, (b) grant liens and other relief to Connan, Inc. as DIP Lender (the "DIP Lender") and (c) setting date for final hearing on the Motion. Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the date hereof.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion and having completed a hearing pursuant to Code § 364 and Fed. R. Bankr. P. 4001(c), and objections, if any, having been withdrawn or resolved or overruled by the Court, **THE MOTION IS GRANTED ON AN INTERIM BASIS, AND THE COURT HEREBY FINDS THAT:**

A.    On October 2, 2006, Debtors were subject of involuntary Chapter 11 petitions and subsequently filed consents to entry for orders for relief on October 3, 2006. Debtors have possession of their property and are operating their business as debtors in possession pursuant to Code §§ 1107 and 1108.

B.    The Court has jurisdiction over these Cases and these proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.    Debtors are unable to obtain unsecured credit allowable under Code § 503(b) sufficient to finance the operations of Debtors' business. Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by the DIP Lender.

D.    An immediate need exists for Debtors to obtain the Postpetition Debt for the reasons set forth in the record, including, without limitation, due to the need to continue ongoing environmental remediation and soil erosion containment so they are completed on a timetable before winter.

E.    In order to prevent immediate and irreparable harm to the estates pending the Final Hearing, Debtors need to incur Postpetition Debt on an emergency basis as provided herein through the conclusion of the Final Hearing.

F.    Debtors approached the DIP Lender and other potential lenders to consider providing postpetition financing. DIP Lender has indicated a willingness to extend the Postpetition Debt, but only on the terms and conditions set forth in this Order and the Postpetition Documents. Under the circumstances of the Cases, the terms and conditions of this Order and the Postpetition Documents are a fair and reasonable response to Debtors' request to

2

incur Postpetition Debt, and the entry of this Order is in the best interests of Debtors' estates and their creditors. Such terms and conditions have been negotiated in good faith and at arms' length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

G.    The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(c) and 9014 and Code §§ 102(1) and 364 or were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT:**

1.    <u>Authorization to Incur Postpetition Debt.</u>

(a)    <u>Postpetition Documents</u>. As consideration for the extension of the Postpetition Debt, the Postpetition Documents and all of the terms and conditions thereof (including all fees, charges and expenses set forth in the Postpetition Documents, each of which shall be nonrefundable once paid), are hereby approved in their entirety. Debtors are hereby authorized to: (1) execute the Postpetition Documents, including all documents that the DIP Lender reasonably deems necessary to implement the transactions contemplated by the Postpetition Documents; and (2) perform each of their obligations under and comply with all of the terms and provisions of the Postpetition Documents and this Order. Upon execution and delivery thereof, the Postpetition Documents shall constitute valid and binding obligations of the Debtors, enforceable in accordance with their terms and this Order.

(b)    <u>Permitted Uses of Postpetition Debt</u>. Debtors are hereby authorized and directed to incur Postpetition Debt: (1) solely in accordance with and pursuant to the terms and provisions of this Order and the Postpetition Documents; (2) solely to the extent

3

required to pay those expenses enumerated in the Budget as and when such expenses become

due and payable; and (3) prior to entry of the Final Order, in an amount not to exceed $700,000.

2.     <u>Postpetition Claims and Liens</u>.  Subject to the Carveout, the Loan and all other obligations under the Postpetition Documents shall be entitled to administrative expense status and shall be secured by liens on all of the Debtors' assets, whether real or personal and whether now owned or hereinafter acquired (other than Avoidance Actions), pursuant to Section 364(c) of the Bankruptcy Code and the Debtors are authorized to execute and deliver mortgages, UCC filings and other documents reflecting such security interests and liens.  Notwithstanding anything herein or in the Loan Documents, all administrative claims of the DIP Lender in the Woodland Harbor Holdings estate shall be subordinate to all administrative claims of Austin Bank in the Woodland Harbor Holdings estate.

3.     <u>Default and Remedies</u>.  In the event that the DIP Lender declares that a Default has occurred, then upon 5 business days prior notice to the Debtors, counsel to Mr. Edward Salomon, counsel to Austin Bank, any Committee and the Office of the U.S. Trustee, the DIP Lender may exercise remedies as set forth in the Loan Documents without further relief from the automatic stay unless a party obtains a determination from the Court or agreement from the DIP Lender that the Default did not occur or has been cured.

4.     <u>Modified Budget.</u>  During the interim period, Debtors shall only make expenditures in accordance with the modified budget attached hereto as Exhibit B (the "Modified Budget").  With respect to remediation related expenditures, expenditures shall be made only with respect to currently stripped land in the interim period.  If Austin Bank and Mr. Salomon agree in writing to additional expenditures beyond the Modified Budget, then Debtors may spend such additional funds, but in no event to exceed $700,000.

5.     <u>Binding Effect.</u>

(a)    <u>Stipulations, Representations and Findings</u>. The stipulations, representations and findings contained in this Order shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee.

(b)    <u>Order</u>. This Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and hearing. If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect (a) the stipulations, representations and findings contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interests or any other benefit or claim authorized hereby prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein, including the liens and priorities granted herein with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Order (such as the beneficiaries of the Carveout), no third party is intended to be, or shall be deemed to be, a third party beneficiary of this order.

(c)    <u>Survival</u>. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case: (1) confirming any chapter 11 plan; (2) converting either of the Cases to a case under chapter 7; or (3) dismissing either of the Cases. The terms and provisions of this Order, including the rights granted the DIP Lender

6

under Code §§ 364(c), shall continue in full force and effect until all of the Postpetition Debt is indefeasibly and finally paid in cash in full and discharged.

   (d) <u>Notice of Further Hearing</u>.  The matter is set for a status hearing on October 17, 2006 at 11:30 a.m.  A final hearing date has not yet been set on this matter.

         _____
         United States Bankruptcy Judge

Dated: October 6, 2006

13.    ***Estates Professionals Carveout.*** A carveout from the Postpetition Liens and administrative claims of the DIP Lender to pay the fees and costs which are incurred through the date of any Default (as and when they become allowed or otherwise payable under interim professional compensation procedures), plus such reasonable budget to winddown the estates after the incurrence of an uncured Default as the Debtors and the DIP Lender may agree upon or the Court may determine upon notice and a hearing.

14.    ***Filing Date.*** October 2, 2006.

15.    ***Final Hearing.*** The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

16.    ***Final Order.*** A final order authorizing Debtor to incur Postpetition Debt entered at or in connection with the Final Hearing, in form and substance reasonably acceptable to the DIP Lender.

17.    ***Interim Order.*** Order Authorizing Debtor To: (a) Incur Postpetition Debt On An Emergency Basis

18.    ***Postpetition Debt.*** (a) All indebtedness or Obligations of Debtors to the DIP Lender incurred on or after the Filing Date pursuant to this Order, the Postpetition Documents, or otherwise.

19.    ***Postpetition Documents.*** The Postpetition Loan Agreement, mortgages, notes, environmental access agreements and easements, UCC filings and other related agreements and documents, all as may be reasonably acceptable to the DIP Lender.

20.    ***Postpetition Loan Agreement.*** That certain Loan Agreement by and among Debtor and the DIP Lender as of October 2, 2006, as amended, modified or supplemented from time to time, a copy of which is attached hereto as Exhibit A.

21.    ***Trustee.*** Any trustee appointed or elected in either of the Cases.

22.    ***UST Carveout.*** A carveout from the Postpetition Liens and administrative claims of the DIP Lender for claims of U.S. Trustee for payment of fees under 28 U.S.C. § 1930(a).

2